UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YVONNE M. DANIEL,

         Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

         Defendant.
_____/

CASE NO. 06-CV-13655

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

STEVEN D. PEPE
UNITED STATES MAGISTRATE JUDGE

**OPINION AND ORDER
(1) ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION;
(2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND
(3) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Magistrate Judge's July 10, 2007 Report and Recommendation denying Plaintiff's Motion for Summary Judgment and granting Defendant's Motion for Summary Judgment. (Doc. No. 12). Plaintiff Yvonne M. Daniel ("Plaintiff") filed timely Objections to the Report and Recommendation on July 16, 2007. Defendant filed a Response to Plaintiff's Objections on July 24, 2007. Having considered the entire record, and for the reasons that follow, the Court ADOPTS the Report and Recommendation, DENIES Plaintiff's Motion for Summary Judgment, and GRANTS Defendant's Motion for Summary Judgment.

**I.    BACKGROUND**

The factual and procedural history of this case is recounted by the Magistrate Judge's Report and Recommendation. (R&R 1-20).

1

Plaintiff originally applied for Social Security Benefits on July 11, 1997. Plaintiff's application subsequently went through several hearings and remands. On March 27, 2003, ALJ Musseman determined that Plaintiff was disabled, with an onset date commencing on October 18, 2002. Plaintiff's instant suit alleges that the ALJ erred by concluding the onset date was October 18, 2002, rather than August 20, 1996.

Plaintiff makes the following Objections to the Magistrate Judge's July 10, 2007 Report and Recommendation:

(1) Plaintiff reiterates her arguments in her summary judgment motion;

(2) The ALJ erroneously relied upon the medical testimony of Dr. Razzek; and

(3) The Magistrate Judge erroneously found that the residual functional capacity ("RFC") opinions of doctors were unsupported.

## II. ANALYSIS

### A. Standard of Review

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1), the Court conducts a *de novo* review of any of the portions of the Magistrate Judge's Report and Recommendation to which a party has filed "specific written objections" in a timely manner. *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).

The Court reviews the Commissioner's decision to deny social security benefits under a "substantial evidence" standard:

> Under 42 U.S.C. § 405(g), the ALJ's findings are conclusive so long as they are supported by substantial evidence. [A court's] review is limited to determining whether there is substantial evidence in the record to support its findings. Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Further, [the court] must defer to an agency's decision even if there is substantial evidence in the record that would have supported an opposite conclusion, so long

>  as substantial evidence supports the conclusion reached by the ALJ. [The court's] role is not to resolve conflicting evidence in the record or to examine the credibility of the claimant's testimony.

*Wright v. Massanari*, 321 F.3d 611, 614-15 (6th Cir. 2003) (internal citations and quotation marks omitted).

### B.    Objection No. 1: Arguments Made on Summary Judgment

Plaintiff first Objection consists of "repeat[ing] the arguments provided in the Motion for Summary Judgment previously filed." (Pl. Obj. 1).

The Court finds that this mere statement does not satisfy the "specific written objection" requirement of Rule 72(b). *See Neuman v. Rivers*, 125 F.3d 315, 323 (6th Cir. 1997) ("A general objection to the entirety of the [magistrate judge's] report has the same effect as would a failure to object").

### C.    Objection No. 2: Erroneous Reliance upon Medical Testimony of Dr. Razzek

Plaintiff objects that the ALJ improperly relied upon the opinions of an internist, Dr. Razzek, rather than a specialist in orthopedic medicine. Plaintiff maintains that the ALJ disobeyed the instruction from the Appeals Council to "obtain evidence from a medical expert to clarify the nature and severity of claimant's orthopedic impairments during the entire period at issue." (Rec. at 483). Plaintiff also insists that the Magistrate Judge incorrectly applied the Sixth Circuit case *Sherrill v. Sec'y of Health & Human Servs*, 757 F.2d 803 (6th Cir. 1985), to the facts of the instant case.

Defendant responds that Dr. Razzek, although admittedly not a specialist in orthopedics, was well-qualified and competent to give testimony on the relevant issues.

The Magistrate Judge made the following conclusions on this issue:

The remand order stated specifically that the ALJ was required to obtain additional evidence "if available" on Plaintiff's orthopedic and mental status and also to "[o]btain evidence from a medical expert to clarify the nature and severity of the claimant's orthopedic impairments during the entire period at issue (20 C.F.R. § 404.1527(f) and Social Security Ruling 96-6p)." It is not surprising that the Appeals Council wanted additional orthopedic evidence because both ALJ Runyan in his June 1999 decision and ALJ Musseman in his September 2001 decision found Plaintiff could not medium work which involves occasionally lifting and/or carrying 50 pounds and frequently 25 pounds. These exertional findings are not supported by the record as it existed at the time of the remand and it is no surprise that the Appeals Council remanded to determine if any additional expert orthopedic evidence might confirm or repudiate such findings.

Dr. Razzek testified at the hearing as the medical expert but he was a board certified internist, and not an orthopedic or psychiatric expert. Upon cross examination by Plaintiff's attorney[,] Dr. Razzek testified in response that, as an internist, he would defer to the opinion of an orthopedic surgeon such as Dr. Noellert. Further, Dr. Razzek refused to comment on Plaintiff's depression, although there was not a psychiatric report from a psychiatrist to which he needed to respond as there was with regard to Dr. Noellert's opinion concerning Plaintiff's use of her hands. Dr. Razzek testified without contradiction that none of Plaintiff's impairments met a listing. He agreed that Plaintiff's work restrictions should include avoiding repetitive type work and aggravating instruments.

Plaintiff argues that the case should be remanded because of Dr. Razzek's lack of specialized knowledge and relies on *Sherrill*. . . . Here, the medical expert was ordered for the sole purpose of evaluating Plaintiff's "orthopedic impairments." Dr. Razzek's testimony hardly complies with that directive. Yet, the legal question is whether on these facts, Dr. Razzek['s] lack of appropriate specialization in orthopedic impairments is a basis for a remand.

This case is significantly different than the *Sherrill* case. In that case Plaintiff had psychiatric testimony that she did qualify for disability under the Listing of Impairments, and the Commissioner's testifying expert acknowledged that the case was a close one and that reasonable minds could disagree on the issue. In this case, Plaintiff was treated by [an] orthopedic specialist but he did not indicate that Plaintiff met any of the Listing of Impairments. In October 1996, Dr. Noellert, the orthopedic surgeon, re-evaluated Plaintiff after surgery and gave a complete work restriction after her pain and numbness returned notwithstanding her initially getting "good relief of her complaints." She never returned to work but did have follow up hand surgery. In April 1998, three months following this second round of hand surgery, Dr. Noellert reported that Plaintiff had subjective pain relief of greater than 75%. She had no numbness and little to no night pain, and digital

motion was full and fluid. Six months after this surgery, Dr. Noellert in July 1998 still thought Plaintiff was "an appropriate candidate for medical retirement," yet he found Plaintiff had "good relief of preoperative paresthesias and night pain" and was making "slow but steady improvement with regard to day-to-day use of the hand." Her finger flexibility was "very satisfactory" but her hand strength was still diminished to 20 pounds on the right compared to 35 pounds on the left. While "sustained use" caused "some degree of swelling and aching[,]" this was "controlled and nonprogressive with appropriate activity modification and other supportive measures such as heat, stretching, and intermittent splinting." She had no evidence of ongoing neuropathy. At the next examination in February 1999, Plaintiff "continue[d] to note improvement regarding her level and resting comfort in both hands." While Plaintiff's counsel focuses on Dr. Noellert's statement that she continued to have "significant limitations with regard to the use of her hands for any type of sustained activity including activities of daily living," he noted that some days she found it difficult to perform housework, cooking and cleaning, but on other days she could do these tasks if she paced herself. While Dr. Noellert added that "[t]he patient is nearing maximum medical improvement, I would continue to support long-standing activity restrictions as previously outlined;" it is not clear what these restrictions were, yet, this is hardly an unqualified statement that Plaintiff is disabled from all employment. Nor is it clear that the activity restrictions Dr. Noellert wanted were not adequately accommodated by ALJ Musseman's restriction of Plaintiff to a limited range of sedentary work that involved "no repetitive gripping or grasping with force. No air, torque, or vibrating tools, and no overhead work. No below waist level work. No repetitive assembly line use of the upper extremities."

In June 1998, Dr. A. Siddiqui, a primary care treating physician, opined that Plaintiff's problems were "so bad that she has been totally incapacitated and not able to work." ALJ Musseman rejected Dr. Siddiqui's opinion of complete disability on the grounds that it is inconsistent with the record as a whole and with Dr. Siddiqui's own treatment notes. Dr. Siddiqui is an internist and not the orthopedic surgeon treating Plaintiff's hand problems and provides no medical reasons for this opinion.

While ALJ Musseman did not comply with the remand order by having an appropriate medical expert, he does appear to accommodate the likely concern of the Appeals Council in significantly modifying the finding of Plaintiff's exertional capacity from medium to a limited range of sedentary work. While courts are divided on whether federal courts have jurisdiction under § 405(g) to reverse and remand for an ALJ's failure to follow the directives of the Appeals Council, on this record it is recommended the Court limit is review to the clear jurisdictional terrain of § 405(g) and review the matter solely whether there is sufficient evidence to uphold the final decision of the Commissioner.

(R&R 21-25) (footnotes and internal citations omitted).

Plaintiff argues that Dr. Razzek's testimony before the ALJ is analogous to the doctor providing "ambivalent" testimony about the plaintiff's physical and psychological condition in the Sixth Circuit's case *Sherrill*. In *Sherrill*, the ALJ found that the plaintiff suffered from a variety of conditions, including "osteoarthritis and back pain; mild degenerative arthritis of the knees; depression, moderate; hypertension; possible fibrositis syndrome; and multiple other health problems." 757 F.2d at 804. However, because of the testimony of a single non-treating physician, the ALJ concluded that none of Plaintiff's impairments singularly, or in tandem, were disabling. *Id*. The doctor in question, an internist, both made "ambivalent" diagnoses, in his area of expertise, about the severity of the plaintiff's conditions, and also made statements about the plaintiff's psychological condition, an area in which he had no training or expertise. The Sixth Circuit observed:

> The only issue before this Court is whether there exists substantial evidence on the record, as a whole, to support the finding that [the plaintiff] is not disabled. . .
>
> [The doctor] testified that his review of [the plaintiff's] file supported the following diagnosis: osteoarthritis of the lumbar spine. After stating that diagnosis, however, [the doctor] said "[i]n all fairness, [in] this area ... people of the same amount of skill might legitimately disagree as to what is age compatible and what is not." Yet, regardless of the legitimacy of contrary diagnoses among equally skilled physicians, [the doctor] opined that [the plaintiff's] condition or conditions did not meet or equal any impairment described in the List of Impairments. [the doctor] supported his opinion with a twofold rationale. First, the medical evidence indicated that [the plaintiff's] hypertension was a recent rather than persistent condition. Second, the medical evidence neither *neatly* or "*precise[ly]* fit" into nor satisfied the categories outlined by the List of Impairments.
>
> Throughout his testimony, however, [the doctor] stated that his conclusions were judgment calls and that any two equally qualified physicians could reach different conclusions. For example, [the doctor] noted that although he concluded that [the plaintiff's] impairments did not equal any impairment in the List of Impairments

> because he could not "pigeonhole" the evidence, the medical evidence could "fit best," into the category regarding "[r]ecurrent and persistent periods of anxiety, with tension, apprehension, and interference with concentration and memory," or the category regarding "[p]ersistent depressive affect with insomina, loss of weight, and suicidal preoccupation." [the doctor] also noted that "the difficulty [was that the List of Impairments required] a 'judgment call' ...," regarding "[h]ow much is marked, how much is serious, and how much is deterioration and personal habit." As a result, [the doctor] further noted that "his opinion [was] a judgment call, and [that] other people may legitimately reach a different conclusion." Moreover, prior to that notation, [the doctor] had stated that there could exist legitimate disagreement between equally qualified physicians as to his initial diagnosis of osteoarthritis of the lumbar spine. Hence, [the doctor's] testimony was ambivalent.
>
> In addition to rendering ambivalent testimony, [the doctor] "appeared and testified at the hearing in the capacity of medical advisor." Consequently, [the doctor] was not one of [the plaintiff's] treating physicians; therefore, he testified regarding his review of the record rather than his course of treatment. As a result, in determining the question of substantiality of evidence, [the doctor's] testimony is entitled to less weight than the reports of any other physicians who examined [the plaintiff] over a period of time.
>
> Nevertheless, the district court relied heavily upon the ambivalent testimony of a non-treating physician to the exclusion of evidence offered by psychiatrists who, in essence, stated that [the plaintiff] is disabled because of her psychiatric impairment. The district court's reliance, however, is disconcerting not only because [the doctor] was a non-treating physician who rendered ambivalent testimony, but also because [the doctor] is a physician who specializes in internal medicine and sub-specializes in pulmonary disease. [The doctor], therefore, is not a psychiatrist. Consequently, his testimony alone does not rise to the level of substantial evidence establishing the nonexistence of [the plaintiff's] psychiatric impairment.

*Id.* at 804-05 (emphasis in original) (internal citations omitted).

Plaintiff argues similarly that Dr. Razzek offered "ambivalent" testimony on matters outside the area of his expertise. The relevant testimony at the September 4, 2002 hearing before ALJ Musseman includes the following exchange between Plaintiff's counsel and Dr. Razzek:

> Q: Do you find documentation in there of, medical documentation, indicating to you the claimant meets the listings as to either of these impairments that you talked about before?

7

> A: There are significant but I don't think they meet the listings.
>
> Q: What would be expected to be reasonable limitations upon the claimant's activities based on your reading of the documentation in that file?
>
> A: Maybe to avoid repetitive type of work, and anything that has vibrating type of instrument. It will aggravate her symptoms, I think. In regard to the depression I am not saying anything about her.
>
> . . . .
>
> Q: Well, let me ask you this. The, well, she is being cared for now by an internist, Dr. Sedake (phonetic), I believe. But the care that she received before that was by an orthopedic surgeon, is that correct?
>
> A: Yes.
>
> Q: And as an internist do you generally refer to an orthopedic surgeon?
>
> A: Correct.

(Rec. at 560, 561).

From this, Plaintiff insists that Dr. Razzek not only produced "ambivalent" testimony to the ALJ, but also ignored the medical records from Dr. Noellert, also an internist, indicating that Plaintiff had limited use of her hands and had sporadic ability to pace herself and complete her tasks.

The Court does not find the testimony of Dr. Razzek to be analogous to the doctor's testimony in *Shirrell*. In *Shirrell*, the testifying doctor openly admitted that his opinions on the plaintiff's disability were debatable by specialists in the field. It is clear that the Sixth Circuit was concerned that the doctor's testimony did not constitute "substantial evidence" supporting the ALJ's decision in that case.

8

In this case, Dr. Razzek has made no such "ambivalent" statements. The fact that Dr. Razzek included such qualifiers as "I think" in his testimony has not undercut the validity of his conclusions. Furthermore, Dr. Razzek's statement that he "generally refer[s]" to an orthopedic surgeon also does not impeach his ability or qualifications to render a medical opinion on Plaintiff's physical condition.[1]

Therefore, the Court adopts the conclusions of the Magistrate Judge on this issue.

### D.      Objection No. 3: Erroneous Conclusion on the Doctor's RFC Opinions

Plaintiff objects to the Magistrate Judge's conclusion that Dr. Siddiqui's RFC opinions were unsupported. The Magistrate Judge discussed this issue:

> From August 20, 1996, until October 17, 2002, ALJ Musseman determined Plaintiff had the RFC "to perform work except for lifting and carrying more than ten pounds occasionally; repetitively gripping or grasping with force; using air, vibratory, or torque tools; working overhead or below waist level; and using the upper extremities repetitively for assembly-type line work. The claimant required a sit/stand option." Plaintiff argues that although this RFC is consistent with Dr. Noellert's opinion from 1994 through 1995, it is not consistent with her abilities after her last two surgeries and the last year she worked. ALJ Musseman noted in his 2003 decision that there was no new evidence since 1999. Plaintiff acknowledges this, but argues that the lack of ongoing treatment is because there is nothing more Dr. Nollert, or the other physicians, could do for her. In his 2001 decision, ALJ Musseman discusses Dr. Nollert's February 1999 treatment notes, but neglects to discuss them specifically in connection to Plaintiff's [RFC]. Yet, as noted above, it is not clear that the RFC used by [?] fell beyond the restrictions Dr. Nollert in 1999 would have found suitable.
>
> ALJ Musseman noted the opinions of the State Agency physicians, Dr. Abasi in November 1997 and Dr. Sethy in March 1999, "that the claimant can lift and carry up to 20 pounds occasionally and ten pounds frequently and can stand or walk a total of six hours in an 8-hour workday." Yet ALJ Musseman's RFC is more restrictive than the state agency physicians', thus, there is no error as to the limited reliance on these physicians' opinions.

---

[1]      Plaintiff also "object[s] to the failure of the ALJ to follow instructions from the Appeals Council to be sure." (Pl. Br. 3). Plaintiff fails to provide any substantive argument on this point in her brief. Additionally, the Court finds that the Magistrate Judge fully discussed, and correctly resolved, this issued. (R&R 25-26).

9

> It is also significant that Dr. Noellert's concern was with sustained use of the hands which caused Plaintiff problems, he acknowledged her ability to cope with activity management and pacing herself. During the cross examination of VE Tremblay, she notes in the 2,100 security monitor positions there would be only minimal use of the hands for answering the phone or making notes of an intruder or other problem which would take only one to two minutes four to five times a day. There was also only minimal use of the hands for writing in the 500 order clerks jobs or occasionally pressing a stop button when a machine jams up to await a repair person in the 2,700 machine tender jobs. These jobs do not appear to violate Dr. Nollert's concern about sustained use of the hands.

(R&R 27-28) (internal citations omitted).

The ALJ concluded on the issue of Dr. Siddiqui's opinions:

> In accordance with 20 C.F.R. 404.1527 and SSRs 96-2p and 96-5p, the Administrative Law Judge has considered the opinion of A. Siddiqui, M.D., in June 1998 that the claimant is "totally crippled" (Exhibit 4F p. 2) and of Jeoffrey K. Stross, M.D., in December 1997 that the claimant is "totally and permanently disabled" (Exhibit 4F p. 95). While such opinions are considered in the evaluation of disability, the final responsibility for determining whether the claimant meets the statutory definition of disability, whether her impairments meet or equal the requirements of the Listing of Impairments, her residual functional capacity, and the application of vocational factors lies with the Administrative Law Judge. These opinions of the claimant's inability to work are not consistent with the record as a whole (especially Exhibit 5F) and are not consistent with Dr. Siddiqui's and Dr. Stross' other records.

(Rec. at 409-10).

Plaintiff contends the ALJ did not give proper weight to Dr. Siddiqui's diagnosis. However, Plaintiff's arguments are generally non-responsive to the ALJ's opinion that Dr. Siddiqui's diagnosis was essentially a legal determination, reserved for the ALJ, and that his diagnosis was inconsistent with his own medical records. Furthermore, Plaintiff does not address the Magistrate Judge's conclusion that the vocational expert adequately took into account the evidence from Dr. Noellert chronicling Plaintiff's physical limitations.

Therefore, the Court finds no error in the Magistrate Judge's conclusions on this issue.

### III. CONCLUSION

The Court hereby:

(1) **ADOPTS** the Magistrate Judge's Report and Recommendation (Doc. No. 12);

(2) **DENIES** Plaintiff's Motion for Summary Judgment (Doc. No. 6); and

(3) **GRANTS** Defendant's Motion to Dismiss. (Doc. No. 9).

**SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: September 7, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 7, 2007.

s/Denise Goodine
Case Manager